OPINION OF THE COURT
John P. Lane, J.
Edward Hale allegedly was injured and died on May 19, 1999 following a fall through a hole in the first floor of Odd Fellow & Rebekah Health Care Facility, where he resided. The hole had been created during an ongoing construction project. Plaintiff has submitted a comprehensive motion to compel disclosure by defendants Odd Fellow & Rebekah Health Care Facility, Odd Fellow & Rebekah Health Care Facility, Inc., and Charles Horoak, who have cross-moved for an order of protection. Most of the issues raised by the motion and the cross motion have been resolved. The issues remaining relate to disclosure of certain minutes of the facility quality assurance committee and of a plan of correction prepared for defendants by a consultant and plaintiff’s use of materials he obtained from the Department of Health.
Defendants have produced minutes of the regular meetings of the quality assurance committee from July 9, 1998 through July 1, 1999 and minutes of a meeting of members of that committee with representatives of the construction contractor held on May 27, 1999 for in camera review. Defendants assert that these minutes are privileged under Education Law § 6527 (3) and 42 USC § 1395Í-3.
Section 1395Í-3 (b) (1) (B) of USC title 42 provides, in pertinent part, that a State may not require the disclosure of records of a quality assessment and assurance committee required to be maintained by a skilled nursing home such as the Odd Fellow facility, except insofar as disclosure is related to compliance by the committee with the requirements of paragraph (1) that the facility provide services to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident.*
Only one court appears to have construed 42 USC § 1395Í-3 (b) (1) (B). In State ex rel. Boone Retirement Ctr. v Hamilton (946 SW2d 740 [Mo]) the Supreme Court of Missouri held that “the privilege created by the Congress in the referenced statute! ] bars a state grand jury from compelling *500 disclosure of records of a quality assurance committee” (946 SW2d at 741). In Boone, a Grand Jury investigating allegations of criminal neglect in the care of residents of a nursing facility issued a subpoena directing the production of any and all records and reports generated by or submitted to the quality assurance committee during a two-year period. The Missouri Supreme Court concluded that the use of the word “State” in establishing the privilege signaled an intent by Congress to prohibit “the whole of the functional, legal entity organized to act as a government” (946 SW2d at 742), and therefore a state Grand Jury, from compelling disclosure of records generated by quality assurance committees but not to materials created outside those committees and submitted to them for review.
The privilege created by Education Law § 6527 (3) is narrower than the federal privilege in that it applies only to disclosure sought in civil actions (see, Matter of Grand Jury Subpoena [People — New York City Health & Hosps. Corp.], 272 AD2d 214; Matter of St. Elizabeth’s Hosp. v State Bd. of Professional Med. Conduct, 174 AD2d 225). Otherwise, the State privilege, which extends to information generated as a part of a quality review process outside of quality assurance review committee proceedings (see, vanBergen v Long Beach Med. Ctr., 277 AD2d 374; Sonsini v Memorial Hosp. for Cancer & Diseases, 262 AD2d 185; Crea v Newfane Inter-Community Mem. Hosp., 224 AD2d 976) as well as to reports received by the Department of Health pursuant to Public Health Law § 2805-Z, is broader than its federal counterpart as interpreted by the Boone court.
Most of the information contained in the minutes of the regular meetings of the quality assurance committee appears to be privileged under Education Law § 6527 (3). However, the entries found in these minutes under the heading “Maintenance,” which include references to inspections of the premises, are not proceedings and records relating to quality review functions or the other situations addressed by Education Law § 6527 (3) (see, Smith v State of New York, 181 AD2d 227, 230). Although section 6527 (3) extends confidentiality to some reports of nonmedical incidents prepared by hospitals pursuant to Public Health Law § 2805-l (see, Katherine F. v State of New York, 94 NY2d 200), section 2805-l does not apply to nursing facilities (see, Matter of Grand Jury Subpoena [People— New York City Health & Hosps. Corp.], 272 AD2d 214, supra).
While maintenance services may affect the safety of residents, staff and visitors of a skilled nursing facility, in a case *501 such as this involving a claim that a resident fell through a large construction hole into the basement of the facility, records of maintenance and inspections activities are more comparable to records of security measures than to records of the care and treatment of the residents (see, Matter of Kristen K. v Children’s Hosp., 204 AD2d 1009), and are not privileged. Therefore, entries concerning maintenance and inspection of the facility found in the minutes of the regular meetings of the quality assurance committee are not shielded from disclosure by Education Law § 6527 (3) (see, Sonsini v Memorial Hosp. for Cancer & Diseases, 262 AD2d 185, supra). For the same reasons, 42 USC § 1395Í-3 (b) (1) (B) does not prohibit disclosure of those entries. Accordingly, copies of the minutes of the regular meetings of the committee redacted to exclude all information found under headings other than “Maintenance” shall be provided to plaintiff.
Education Law § 6527 (3) does not provide a cloak of confidentiality for the minutes of the meeting of May 27, 1999. The purpose of the statute is to assure the confidentiality of internal medical and quality review proceedings, not a meeting with representatives of a construction contractor (see, Elmer v State of New York, 179 AD2d 1000; Byork v Carmer, 109 AD2d 1087). By inviting representatives of the contractor, which is a codefendant in this action, to meet with members of the quality assurance committee, defendants waived any right to assert a claim of privilege under either section 6527 (3) or 42 USC § 1395Í-3 (b) (1) (B) for the record of that meeting in disclosure proceedings in this action. The contractors representatives’ participation in the meeting was unrelated to internal quality assurance review (cf., Little v Hicks, 236 AD2d 794). Defendants shall fully disclose the minutes of that meeting to plaintiff.
The remaining issue concerns a plan of correction that defendants allegedly submitted in response to a statement of deficiencies issued by the Department of Health. It is unclear whether plaintiff has obtained a copy of the plan and a statement of deficiencies, or just the statement, through a Freedom of Information Law (FOIL) demand made to the Department. In any event, defendants claim that the plan of correction, which was discussed at the meeting with the contractor’s representatives, is a product of the quality assurance function and is exempt from disclosure under both Education Law § 6527 (3) and 42 USC § 1395Í-3 (b) (1) (B). Thus, they appear to argue that plaintiff should not be allowed to make use of the material he obtained from the Health Department.
*502 Defendants maintain that no written report of the incident involving Edward Hale was submitted to the Department of Health, and that had a report been submitted, it would be confidential under Public Health Law § 2805-m (2). Section 2805-m (2), which does not apply to nursing facilities (see, Matter of Grand Jury Subpoena [People — New York City Health & Hosps. Corp.], 272 AD2d 214, supra), shields incident reports filed with the Department pursuant to Public Health Law § 2805-Z from disclosure under either FOIL or article 31 of the CPLR. However, section 2805-Z requires only hospitals to file incident reports (see, Matter of Grand Jury Subpoena [People— New York City Health & Hosps. Corp.], supra). If defendants filed such a report voluntarily, it would not be privileged and they would not be protected from disclosure.
Defendants have produced copies of a series of memoranda from a consultant, which it identifies as the plan of correction, for in camera inspection. It is unclear whether these materials are copies of documents that plaintiff obtained through FOIL. On the record before me, it is not possible to determine if these documents are quality assurance materials and therefore privileged or some other type of material required by the Department of Health that may not be privileged (see, Maisch v Millard Fillmore Hosps., 262 AD2d 1017; Carter v County of Erie, 255 AD2d 984). No affidavit or argument has been offered that might explain why the Department would release information specifically exempted from disclosure under FOIL (see, Public Officers Law § 87 [2] [a]). Defendants also argue that the plan of correction was prepared by a consultant who was retained by one of their attorneys to assist in the defense of anticipated enforcement proceedings. The parties and the Court need to consider whether defendants have waived the right to claim the litigation privilege by discussing the plan with representatives of the contractor codefendant. In view of the uncertainty concerning the purpose of the plan of correction and its connection, if any, to the documents plaintiff obtained from the Department of Health, defendants have failed to meet their burden of proof on the cross motion on this issue (see, Little v Highland Hosp., 280 AD2d 908). If they wish to pursue the point, they should do so by a fully supported motion.
Plaintiff’s motion to compel disclosure and defendants’ cross motion for a protective order are granted to the extent indicated above and each is otherwise denied.

 This provision applies to every skilled nursing facility receiving Medicare or Medicaid, including the Odd Fellow facility. A similar provision (see, 42 USC § 1396r [b] [1] [B]) applies to nursing facilities.